# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

**CONNIE JEAN SMITH, individually and**            **PLAINTIFFS**
**on behalf of all others similarly situated**

**v.**             **CASE NO. 4:14-CV-00435 BSM**

**SEECO, INC. n/k/a SWN Production**
**(Arkansas), LLC., et al.**            **DEFENDANTS**

## ORDER

The class's emergency motion for a temporary restraining order [Doc. No. 352] is denied.

This federal class action overlaps with similar class actions in different courts, though only the overlap with one of the Arkansas state court cases is implicated here. In *Snow v. SEECO*, Case No. CV-2010-126 (Conway Cnty. Cir. Ct. Ark.) ("*Snow*"), the Arkansas state court certified a class of royalty interest owners consisting of only Arkansas citizens. *SEECO, Inc. v. Snow*, 506 S.W.3d 206, 210 (Ark. 2016). In this federal case ("*Smith*"), a class was certified of all royalty interest owners regardless of state citizenship, residence, or any other characteristic. Doc. No. 186. In other words, the *Snow* class is a subset of the *Smith* class. The federal case is set for trial on June 5, 2017; the state case is scheduled for August 28, 2017. *See* Doc. No. 343 at 3. By all accounts, the cases have proceeded on parallel paths, both focused on trial, with the federal case always closest to resolution.

Remarkably, that reality changed in the past four days. On May 16, 2017, the defendants and plaintiffs in *Snow* attended mediation to resolve the dispute between

defendants and Arkansas citizens. Doc. No. 343 at 3. Even though *Snow* has always consisted of only Arkansas citizens, *Snow* class counsel was able to negotiate a settlement on behalf of all royalty interest owners – those counsel represented and those not part of the certified class. Surprisingly, less than forty-eight hours later, the parties were able to memorialize their settlement agreement, prepare pleadings, and have an Arkansas state court judge review the agreement in light of the vastly different class definition. The state court judge preliminarily approved settlement and directed notice be distributed by May 22, 2017 – the event the class here asks to enjoin. The now much broader class will need to review the settlement, evaluate their options, and make plans for a fairness hearing on June 28, 2017. *Id.* 3-4. Put simply, a case that consisted of only Arkansas citizens could now decide the fate of royalty interest owners everywhere – a fate mediated, approved, distributed to the class, and analyzed by an Arkansas state court within forty-three days.

The class in *Smith* moved for a temporary restraining order to enjoin defendants and anyone acting in concert with them (*i.e.*, the *Snow* plaintiffs) from "disseminating in any way . . . settlement notice in *Snow* and from otherwise communicating with any member of the Class certified in [*Smith*]." Doc. No. 352 at 1. When evaluating whether to issue a temporary restraining order, courts must consider (1) the threat of irreparable harm to the movant; (2) the balance between this harm and the injury caused by issuing the order; (3) the probability the movant will succed on the merits; and (4) the public interest. *See Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc); *McLeodUSA*

2

*Telecommunications Servs., Inc. v. Qwest Corp.*, 361 F. Supp. 2d 912, 918 (N.D. Iowa 2005) (applications for temporary restraining orders and injunctions are generally measured by same standards).

The problem here is that the class cannot show irreparable harm. Although no single factor is itself dispositive, irreparable harm is critical to enjoining activity. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07 (1959) ("The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies."); *Geico Corp. v. Coniston Partners*, 511 F.2d 414, 418 (8th Cir. 1987) ("The threshold inquiry is whether the movant has shown the threat of irreparable injury. The failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction[.]"). The class argues for harm in three ways: (1) settlement notice is misleading; (2) the settlement is the product of collusion and severely undercuts the class's recovery; and (3) settlement notice frustrates the attorney-client relationship between class counsel and class members.

As an initial matter, the class's brief in support mixes argument for both preventing notice and preventing settlement. For example, when discussing the threat of irreparable harm, the class spills ink on both critiquing the "sweetheart deal" and on the integrity of notice. *See* Doc. No. 353 at 10-11. Make no mistake though: the class has not asked to enjoin settlement, but rather only to prevent the settlement notice that must be distributed by May 22, 2017. *See* Doc. No. 352-1 (proposed order prohibiting notice). Regardless, the

integrity of the proposed settlement is firmly within the province of the state court, which must evaluate the process of settlement and determine whether its terms are fair. *See* Ark. R. Civ. P. 23(e) (requiring court approval for settlement); *Ballard v. Martin*, 79 S.W.3d 838, 844-45 (Ark. 2002) (citing *Gruinn v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir. 1975), ("[T]he trial court is accorded deference, but that deference is accompanied by a duty to act as a fiduciary who must serve as guardian of the rights of absent class members . . . [N]o court should accept a settlement that is unfair or inadequate, and the burden is on the proponents of the settlement to show that the proposed settlement meets standards of fairness and adequacy.")). Even assuming *Smith* class counsel won at trial (which may very well result in a significantly larger award) or was able to negotiate a better settlement, irreparable harm does not result simply because *Snow* reached finality first.

On the issue of misleading notice, there is no irreparable harm because any harm can be addressed through some other action. For example, class member confusion between *Snow* and *Smith* can be addressed through supplemental notice in *Smith*. Furthermore, a class member who believes the settlement notice was not adequate would not be bound by the *Snow* judgment. Assuming *Snow* enters final judgment, class members are not bound unless they had adequate notice to satisfy due process. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985); *see Grunin*, 513 F.2d at 120 ("By virtue of the fact that an action maintained as a class suit under Rule 23 has *res judicata* effect on all members of the class, due process requires that notice of a proposed settlement be given to the class."). It is true

4

that due process requires notice that adequately conveys the required information and provides a reasonable time for those interested to make an appearance to object. *Grunin*, 513 F.2d at 120 (The notice must "reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance." (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950))). Thus, if settlement notice is indeed deficient, a later court can address the due process concerns and permit the class member to air grievances in a new lawsuit.

The more troubling issue is that of the attorney-client relationship. There can be no question that *Smith* class counsel has a unique attorney-client relationship with class members regardless of whether that relationship was established after certification or at the conclusion of the opt-out period. *See Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1206-07 (11th Cir. 1985) ("defense counsel had an ethical duty to refrain from discussing the litigation with members of the class as of the date of class certification"); *In re Katrina Canal Breaches Consol. Litig.*, Civil Action No. 05-4182, 2008 WL 4401970, at *3 (E.D. La. Sept. 22, 2008) ("A client-lawyer relationship with a potential member of the class does not begin until the class has been certified and the time for opting out by a potential member of the class has expired."); Newberg on Class Actions § 9:9 (5th ed.) ("Absent class members are therefore 'represented parties,' and ethics rules prohibit opposing counsel from contacting them directly."). While defendants and their counsel could not communicate with the *Smith* class without first communicating with class counsel, the defendants retreated to state court

5

and negotiated a settlement for class members that *Snow* class counsel did not yet represent (*i.e.*, royalty interest owners who were not Arkansas citizens). Now with preliminary approval to distribute settlement notice, defendants maneuvered themselves to do an end-run around the communication barrier in *Smith*; that is, work with *Snow* counsel to not just reach a settlement with the class members they represent, but to also communicate with class members outside the *Snow* class to resolve all claims at once.

Assuming this is inappropriate, the difficult question is the appropriate remedy. Having already determined that the practical effect of these communications – *i.e.*, settlement – is not irreparable harm, the remaining issue is whether the communications themselves are such a harm. These communications, although troubling, are akin to ethical questions that cannot be alleviated by temporary restraining orders. *See Devazier v. Caruth*, Case No. 2:16-CV-00067 KGB, 2016 WL 3939777, at *6 (E.D. Ark. July 15, 2016) ("[The] complaint is largely predicated on alleged violations of the Arkansas Rules of Professional Conduct, which cannot be used as a basis for liability."). Although courts can issue sanctions to parties and attorneys, and ethics boards can investigate ethical wrongdoing, a temporary restraining order is simply not available, especially when a state court has authorized the activity to occur.

Aside from the merits, federalism cautions strongly against interfering with *Snow*. *See Atl. Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970) ("Any doubts as to the propriety of a federal injunction against state court proceedings should

6

be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy."). The Anti-Injunction Act is a strict limitation on federal power that is an "absolute prohibition against enjoining state court proceedings." *Id.* at 286. Although the class is correct that certain exceptions exist, the overarching purpose is to avoid the "needless friction" that would occur when the *Snow* and *Smith* courts begin "fight[ing] each other for control of a particular case." *Id.* at 286. That is exactly what the class's request does here: the request asks the federal court to assert its dominance over the state court, even though the state court has already exercised its judgment and decided settlement notice is appropriate.

The class is correct that enjoining proceedings is appropriate when "necessary in aid of [the federal court's] jurisdiction." 28 U.S.C. § 2283. The class confuses this exception as one allowing federal courts to ensure its actions reach final judgment first, but the exception is actually much narrower. *See Burr & Forman v. Blair*, 470 F.3d 1019, 1028 (11th Cir. 2006) ("In light of the federalism concerns underlying [the] Anti-Injunction Act, courts construe the . . . exceptions narrowly."); *T. Smith & Son, Inc. v. Williams*, 275 F.2d 397, 405 (5th Cir. 1960) ("The phrase, 'where necessary in aid of its jurisdiction', therefore, should be interpreted narrowly, in the direction of federal non-interference with orderly state proceedings."). "The traditional notion is that *in personam* actions in federal and state courts may proceed concurrently, without interference from either court, and there is no evidence that the exception to § 2283 was intended to alter this balance." *Vendo Co. v. Lektro-Vend*

7

*Corp.*, 433 U.S. 623, 642 (1977) (plurality opinion). The fear that an Arkansas state court might reach final judgment first does not justify the federal court exerting dominance. "In short, the state and federal courts had concurrent jurisdiction in this case, and neither court was free to prevent either party from simultaneously pursuing claims in both courts." *Atl. Coast Line R.R. Co.*, 398 U.S. at 295.

In the end, the class made its case that the situation is troubling. For example, the defendants questioned the adequacy of identifying class members [Doc. No. 291], yet now feel comfortable relying on identification procedures in state court when a settlement materialized. But even if the class is correct that what the state court is doing is wrong, the unfortunate reality is that the error will only result in continued litigation if settlement moves forward. This reality does not create a legal basis to intervene and question a state court decision. *Atl. Coast Line R.R. Co.*, 398 U.S. at 296 ("lower federal courts possess no power . . . to sit in direct review of state court decisions."). That privilege is left to the Arkansas appellate courts and, potentially, the Supreme Court of the United States.

Accordingly, the class's emergency motion for a temporary restraining order [Doc. No. 352] is denied.

IT IS SO ORDERED this 20th day of May 2017.

*[signature: Brian S. Miller]*
UNITED STATES DISTRICT JUDGE