# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

**CONNIE JEAN SMITH, individually and**                      **PLAINTIFFS**
**on behalf of all others similarly situated**

**v.**                         **CASE NO. 4:14-CV-00435 BSM**

**SEECO, INC. n/k/a SWN Production**
**(Arkansas), LLC., et al.**                                        **DEFENDANTS**

## ORDER

The defendants' motion to disqualify class counsel, remove the class representative, and decertify the class [Doc. No. 417], and defendant DeSoto Gathering Company's motion for a one-week continuance [Doc. No. 418] are denied.

    A.     <u>Motion to Disqualify Counsel, Remove Representative, and Decertify Class</u>

Defendants' motion [Doc. No. 417] is denied because class counsel is adequate, Connie Jean Smith is an adequate class representative, and there is no reason this case cannot proceed as a class action.

As an initial matter, class counsel has not yet formally responded to this motion, which defendants filed on the Sunday afternoon of Memorial Day weekend. Nevertheless, defendants quickly sought mandamus relief, asserting that I refused to rule on their motion. The record is well-developed, and class counsel recently filed a brief response to a related filing the day prior to defendants' motion. *See* Doc. No. 416. Thus, there is sufficient information in the record to understand the parties' positions and issue a decision.

The gist of defendants' motion is that class counsel has become inadequate. It is well-

established that "[c]lass counsel must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). Although there is flexibility in how class counsel's adequacy is assessed, the general theme is that counsel must "be qualified, experienced and generally able to conduct the proposed litigation." *Eisen v. Carlisle and Jacquelin*, 391 F.2d 555, 562 (2nd Cir. 1968). At the time the class was certified, the record demonstrated that class representative Connie Jean Smith selected adequate counsel. Doc. No. 186 at 11–12. Nevertheless, courts have an ongoing duty to monitor the adequacy of representation. *See* Fed. R. Civ. P. 23(g)(1)(E); *In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1112 (10th Cir. 2001).

Rule 23(g)(1)(A) provides four factors that courts "must" consider in assessing adequacy. When measured by these factors, class counsel has been more than adequate. For example, counsel's collective experience, which must be considered under Rule 23(g)(1)(A)(ii), in oil and gas litigation and other complex matters, is impressive. *See In re Vicuron Pharmaceuticals, Inc. Securities Litigation*, 233 F.R.D. 421, 428 (E.D. Pa. 2006) (noting proposed counsel's experience); *e.g.,* Danielson Law Firm Profile, Doc. No. 46-28 (Erik Danielson has represented mineral owners and operators in multiple cases throughout Arkansas for more than nine years); Decl. Geoffrey C. Jarvis ¶ 7, Doc. No. 216 (new addition to class counsel team was lead or co-lead counsel on multiple security class actions); Decl. Melissa L. Troutner ¶¶ 6-7, Doc. No. 309-1 (new addition to class counsel team with experience representing large companies and working for the federal judiciary, including

2

work on class actions).

It is also clear that counsel's command of the applicable law and resources available to prosecute this case are more than adequate, thus satisfying Rule 23(g)(1)(A)(iii) and (iv). For example, class counsel routinely submits thoroughly researched and compelling briefs on both routine matters and novel legal issues. *See, e.g., Rambarran v. Dynamic Airways, LLC*, Case No. 14-CV-10138 KBF, 2015 WL 4523222, *9 (S.D.N.Y. 2015) (finding proposed class counsel inadequate when "counsel has demonstrated a lack of ability to litigate on behalf of the class" by failing to make timely motions, prepare an adequate factual record, and prepare briefs with limited citations); *Moss v. Lane Co.*, 50 F.R.D. 122, 126 (W.D. Va. 1970) (noting adequacy "as demonstrated by the pleadings and other memoranda" in case). They were successful in obtaining class certification, defending against defendants' well-researched summary judgment motions, and complying when directed to perform administrative tasks on behalf of the class. *See, e.g.* Doc. No. 279 at 13 (directing class representative to audit exclusion requests and provide updated report); Doc. No. 283 (updated report provided eight days later). Their ability to vigorously prosecute this case on the class's behalf is best demonstrated by successfully balancing these responsibilities with the unique challenges presented in this case, including filing responses to motions on short notice and defending against a lawsuit filed against them in their personal capacity by lawyers in a competing state court class action. *But see, e.g., Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667, 679 (N.D. Ohio 1995) (finding class counsel was inadequate when "the proposed

class failed to research legal issues adequately and to construct thoughtful pleadings" and were "incapable of handling the workload involved in processing the extensive discovery material which necessarily arises in an action such as this"). Frankly, class counsel's performance thus far has been nothing short of impressive.

Despite class counsel's skill in representing the class, defendants now argue class counsel cannot continue because of unethical behavior. Rule 23(g)(1)(B) provides that courts "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" For example, "any conduct that suggests that class counsel may have been engaging in unethical behavior is relevant in determining the adequacy of the representation." *E. Maine Baptist Church v. Regions Bank*, Case No. 405-CV-962 CAS, 2007 WL 3022220, at *5 (E.D. Mo. Oct. 12, 2007) (quotations omitted).

Defendants' argument focuses on a fee-sharing agreement between class counsel in this federal case ("*Smith*") and a related state court class action, *Snow v. SEECO* ("*Snow*"). *Smith* and *Snow* began as two putative class actions proceeding on parallel paths with no chance of intersection. In *Snow*, which was filed in state court in 2010, the class representative's original complaint sought a class consisting of "persons or entities *who are citizens of the State of Arkansas*." Compl., *Snow v. SEECO, Inc., et al.*, Case No. 15CV-10-126 (Conway County Cir. Ct., Ark. May 7, 2010) (emphasis added); *Matter of Phillips*, 593 F.2d 356, 358 (8th Cir. 1979) (proper to take judicial notice of state court pleadings absent a dispute). In *Smith*, the class representative sought a class of persons and entities excluding

"citizens of the State of Arkansas." Compl. ¶ 48, Doc. No. 1 (filed July 25, 2014). In other words, when *Smith* and *Snow* began, they sought to litigate the same issues, on the same leases, and against the same defendants, but *Smith* would represent everyone that *Snow* did not. On October 14, 2014, *Snow*'s class became certified. *SEECO, Inc. v. Snow* ("*SEECO*"), 506 S.W.3d 206, 210 (Ark. 2016).

According to the record, counsel for defendant SEECO contacted *Snow*'s counsel after *Snow* was certified "to discuss the possibility of a global resolution of the claims." Doc. No. 417-2 at 7; Smolen Aff. ¶ 7, Doc. No. 417-5 (attorney representing all statements in the brief filed in state court, Doc. No. 417-2, are true and accurate and that he has personal knowledge to substantiate that conclusion). In December 2014, counsel for *Snow* and counsel for *Smith* discussed a plan for the future prosecution of both cases, and they entered into a "fee sharing agreement," which until recently, was apparently intended to remain confidential. *Id.* at 8. *Smith* class counsel does not deny the existence of the agreement. *See* Doc. No. 416 at 1. In reviewing that agreement, it appears *Snow* and *Smith* counsel agreed that their intention was to continue on their respective tracks – *i.e., Snow* would only focus on Arkansas citizens and *Smith* would stick to everyone else. Doc. No. 417-3 at 2. The agreement also provided that if either class negotiated a settlement that affected the claims of the other class, the lawyers would share the court-approved attorneys' fees. *Id.*

In February 2015, while *Snow* was hung up on appeals in Arkansas state courts, *see SEECO*, 506 S.W. at 211 ("SEECO filed a notice of appeal on October 28, 2014."), a

5

mediation was held in California in an attempt to reach a global settlement. Doc. No. 417-2 at 10. That mediation was unsuccessful. Defendants and class counsel dispute whether the agreement survived after mediation. *See* Doc. No. 416 at 2 ("However, once that mediation failed, the fee sharing agreement was no longer in effect.").

In May 2015, while appeals in *Snow* were pending, Smith attempted to certify a class that excluded "members of the class certified in *Eldridge Snow v. SEECO, Inc.*" and another related state court class action. Doc. No. 45 at 2. The motion was denied on November 17, 2015, because it was impossible to determine who was in those state court classes and who was not. Doc. No. 110 at 4. In December 2015, Smith moved for certification again, this time excluding royalty owners "with an Arkansas address." Doc. No. 113 at 2. If her request was denied, Smith also proposed an alternative class without the "Arkansas address" exclusion. *Id.* at 12. In response, defendants collectively argued that Smith's proposed class with the "Arkansas address" exclusion "creates unnecessary confusion and opens the door to compatible judgments, simply to preserve what appears to be a division of proceeds among cooperating plaintiff lawyers in the state and federal lawsuits." Doc. No. 125 at 1.

On April 11, 2016, Smith's alternative class was certified – *i.e.,* a class of royalty interest owners without the "Arkansas address" exclusion. Doc. No. 186. On September 12, 2016, notice was sent by first-class mail to over 12,000 royalty interest owners. *See* Hamer Dec. ¶¶ 3-4, Doc. No. 244. The notice period ended soon thereafter, with relatively few exclusions received, and of those received, many were from attorneys involved in state court

6

class actions seeking *en masse* exclusion. *See* Doc. No. 279 at 7–12. The *Snow* appellate saga finally ended on January 19, 2017, when the Supreme Court of Arkansas denied rehearing on their decision to affirm certification of the *Snow* "Arkansas citizens" class. *SEECO, Inc. v. Snow*, Case No. 15-197, 2017 Ark. LEXIS 13, at *1 (Jan. 19, 2017). For much of 2017, the relationship between *Snow* and *Smith* persisted: *Smith* overlapped with *Snow*, but only *Smith* was ready for trial.

*Smith* is set for trial in four days. On May 16, 2017, *Snow* counsel and defendants attended mediation without *Smith* counsel's knowledge. Doc. No. 343 at 3; Doc. No. 416 at 2. Although *Snow* only consisted of "Arkansas citizens," *Snow* class counsel negotiated a settlement for all royalty interest owners – *i.e.*, the same or similar arrangement SEECO approached *Snow* counsel with back in late 2014. That settlement paperwork reflecting the new class definition was signed on May 18, 2017, which is the same date a state court judge preliminarily approved settlement. A final approval hearing on the proposed settlement in state court is "currently" scheduled for June 28, 2017. Doc. No. 342 at 2.

After settlement news came to light, the parties filed a flurry of motions requesting continuances, restraining orders, and sanctions. Defendants have also filed a "notice" of "newly discovered" evidence, which was a copy of the fee-sharing agreement that *Snow* class counsel filed in state court less than one week ago. According to defendants, the revelation of this fee-sharing agreement questions the integrity of the *Smith* class lawyers because (a) the agreement provided lawyers an incentive to reject settlement offers because the fee

7

agreement only provided fee-sharing in the event of settlement, and (b) *Smith* counsel misrepresented during a hearing in federal court that the fee agreement either did not exist or had been terminated after the failed mediation. *See* Doc. No. 417 at 14-22.

Whether the fee agreement is actually enforceable or whether any fees will be divided is the subject of litigation initiated in a U.S. District Court in Oklahoma by *Snow* class counsel on May 26, 2017. *See* Doc. No. 416-1 (complaint filed by plaintiffs Caruso Law Firm, Smolen, Smolen & Roytman, and Law Office of Dale Lipsmeyer); Doc. No. 415-1 at 19 (attorneys from same firm). Whether *Smith* and *Snow* counsel are bound by the agreement is not the focus here; rather, the focus is what impact, if any, the fee agreement has on *Smith* class counsel's ability to adequately represent the class.

After reviewing the record, there is no concern about class counsel. First, the allegedly false statements made in July 2015 (and similarly, the repeated statements made just recently in response to defendants' notice of newly discovered evidence) are of little concern. Defendants, who are not parties to the fee-sharing agreement, are adamant that the fee-sharing agreement is still in effect and that *Smith* class counsel's statements that the agreement was limited to the mediation was a misrepresentation. *See* Doc. No. 417 at 2 (citing to transcripts). Their argument essentially rests on a text message sent by class counsel on June 26, 2015, proposing language terminating the fee agreement. *See* Smolen Aff. ¶ 5; Doc. No. 417-6 at 2.

The defendants presented records filed in state court by *Snow* lawyers suggesting that

8

the agreement was not terminated and that class counsel would continue to honor it. *See, e.g.,* Smolen Aff. ¶ 6 (Daniel Smolen, a party to the fee agreement, declining to recognize termination). This position, though, is not supported by the record. On July 29, 2015 (nearly one month after the text message), *Smith* counsel represented that the agreement was solely for the purpose of mediation (and later reiterated the same on May 27, 2017, Doc. No. 416). *See* Mot. Hr'g Tr. 37:12-37:14, Doc. No. 74. Indeed, if the agreement had not been terminated, it appears class counsel would have been in breach in December 2015 when they sought class certification for a nationwide class, because the fee agreement represented that *Smith* counsel had no intention "of litigating or settling any Claims of Arkansas Owners." *Compare* Doc. No. 114 at 6 (seeking alternative, nationwide class), *with* Doc. No. 417-3 at 3 (stated intent). This would also explain *Snow* class counsel's conduct in not involving *Smith* class counsel in their recent settlement negotiations, even though they agreed "to include Smith's Counsel in such negotiations" in their fee-sharing agreement. Doc. No. 417-3 at 3.

Second, the existence of the fee agreement requiring a division of attorneys' fees does not cause concern as to counsels' adequacy. Defendants' position is that the fee-sharing agreement causes unacceptable motivation for *Smith* class counsel to push forward to trial and reject settlement offers because the agreement only requires splitting fees if a case settled. In other words, class counsel cannot be trusted to seriously consider settlement offers (which defendants do not clearly state were extended) because they are focusing their eyes

9

on trial so they can pocket the entire fee.

As previously stated, the record supports *Smith* class counsel's position that the fee agreement terminated years ago, *before* the class was certified in federal court. Even if this were not the case, an objective view of the record (again) undercuts defendants' position. Defendants have been persistent that the order denying their motion for a continuance to allow the *Snow* settlement to proceed was in error, especially considering that the *Smith* class *joined* defendants in the request for a continuance. How can defendants accuse *Smith* class counsel of turning a blind eye toward possible settlement opportunities for class members by only focusing on trial, when the *Smith* class (through counsel) actually wanted the settlement in *Snow* to proceed? Indeed, this *Smith* trial is progressing because class members have been waiting for years to have their case brought to a conclusion, and it is time to put this case to rest.

In the end, however, focusing on these fee agreements and a few sentences at a hearing two years ago is merely an attempt to deflect attention from the reality that is unfolding: defendants seek to disqualify *Smith* class counsel based on this fee agreement but have not sought to disqualify *Snow* class counsel for entering into the same agreement. The reality, of course, is that the defendants have reiterated the reasonableness of the *Snow* settlement, even though *Snow* counsel would have been faced with the same "trial or no trial" dilemma presented here.

Finally, defendants' argument that, if their arguments on class counsel fail, then Smith

should be removed as class representative or the class should be decertified, is denied. There are no concerns with Smith's ability to "fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). After finding defendants' arguments are without merit, defendants' conclusory statements about Smith raise no concerns about her ability to push forward. Similarly, defendants presented no argument – and there is no reason – to "decertify the class in its entirety," Doc. No. 417 at 22 (capitalization omitted), when the issues involved here are certainly ripe for the class action mechanism.

Defendants argue that these decisions cannot be made because further investigation and subsequent proceedings are necessary. *See* Doc. No. 417 at 23. Defendants' arguments are unpersuasive. The record is fully developed and all are familiar with the relevant events. There is nothing that a further investigation can elicit and nothing that a hearing can filter through that has not already been articulated in the papers. As counsel represented to the state court, and the local bar confirmed, I do not schedule hearings on all motions. *See* State Hr'g Tr. 95:10-95:25.

B.  Motion for One Week Continuance

Defendant DeSoto Gathering Company's motion to continue trial [Doc. No. 418] based on the conflict of one of its lawyers is denied.

DeSoto requests a one-week continuance because its "lead trial counsel" is in trial in the U.S. District Court for the Eastern District of Tennessee. *See* Doc. No. 418 at 1. Although the request is certainly understandable, DeSoto is represented by three other

lawyers, and lawyers representing other defendants have filed briefs on DeSoto's behalf. *See* Doc. No. 418 at 5 (attorney signature block listing three other lawyers); Doc. No. 322 (trial brief filed by Jess Askew on behalf of multiple defendants, including DeSoto); Class Certification Hr'g Tr. 103:12–103:18, Doc. No. 96 (Tabolsky working with class counsel to address exhibits for admission). DeSoto delayed in filing the motion until May 30, 2017 – less than one week before trial – and failed to advise of any potential for delay, even though DeSoto's counsel had notice of the initial delays beginning May 16, 2017. *See* Doc. No. 418 at 13 (description of delays).

Further, class counsel has already traveled to Little Rock to finish preparation for next week's trial, and travel arrangements for witnesses and the class representative have been made. *See* Doc. No. 420 at 5. Also, one of the defendants' witnesses, Kyle Pearson, will become unavailable should this case be continued. Doc No. 418 at 4. Defendants' proposal that class counsel can rush to perform a pre-trial deposition to make up for Pearson's unavailability is unacceptable.

DeSoto's motion to continue trial [Doc. No. 418] is denied. DeSoto is represented by other lawyers who are capable of stepping up until lead counsel is available.

IT IS SO ORDERED this 1st day of June 2017.

_____
UNITED STATES DISTRICT JUDGE